1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  CASEY BOOME (NYBN 5101845)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6627
7       FAX: (415) 436-7234
        casey.boome@usdoj.gov
8
   Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 18-0463 CRB |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR |
| v. | COMPASSIONATE RELEASE FROM CUSTODY |
| VICTOR TURK, | |
| Defendant. | |

TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1
BACKGROUND ...................................................................................................................1
ARGUMENT .........................................................................................................................3
I.    DEFENDANT HAS ADMINISTRATIVELY EXHAUSTED ........................................3
II.   REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED ..................4
    A.    Applicable law ...................................................................................................4
    B.    The government does not contest that Defendant presents an extraordinary and compelling circumstance ..................................................................................6
    C.    Defendant poses a danger to the community if released ..................................7
        1.    Nature and circumstances of the charged offense, § 3142(g)(1) .............7
        2.    Weight of the evidence, § 3142(g)(2) ......................................................8
        3.    Defendant's history and characteristics, § 3142(g)(3) ............................8
        4.    Danger to others, § 3142(g)(4) ...............................................................10
    D.    Analysis of the 18 U.S.C. § 3553(a) factors weighs against compassionate release ..............................................................................................................10
III.  IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH APPROPRIATELY RESTRICTIVE CONDITIONS ........................................11
CONCLUSION .....................................................................................................................12

# TABLE OF AUTHORITIES

### Federal Cases

*United States v. Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (N.D. Cal. May 22, 2020) ............................. 5

*United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020) ........................ 4, 7

*United States v. Ceballos*, 671 F.3d 852 (9th Cir. 2011) ............................................................... 3

*United States v. Daychild*, 357 F.3d 1082 (9th Cir. 2004) ............................................................. 10

*United States v. Furaha*, No. 09-CR-00742-JST-1, Dkt. 36 at 4 (N.D. Cal. May 8, 2020) ...................... 10

*United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008) ...................................................................... 8

*United States v. Johnson,* No. 16-CR-251-WHA, Dkt. 103 (N.D. Cal. August 26, 2020) ....................... 10

*United States v. Makela,* No. 19-CR-215-CRB-1, Dkt. 46 (N.D. Cal. July 10, 2020) ................... 9, 10, 11

*United States v. Raia*, 954 F.3d 594 (3d Cir. 2020) ........................................................................ 5

*United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020) ............................... 4

*United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020) ............................ 4

*United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020) ..................... 5

*United States v. Zaragoza*, 2008 WL 686825 (N.D. Cal. Mar. 11, 2008) ............................................ 10

### Federal Statutes

18 U.S.C. § 924(c)(1)(A) .................................................................................................................. 1

18 U.S.C. § 3142(g) .............................................................................................................. 4, 7, 11

18 U.S.C. § 3142(g)(1) ..................................................................................................................... 8

18 U.S.C. § 3553(a) ........................................................................................................................ 10

18 U.S.C. § 3582(c)(1)(A) ......................................................................................................... 4, 5, 6

18 U.S.C. §§ 3621(b) ........................................................................................................................ 3

21 U.S.C §§ 841(a)(1) ...................................................................................................................... 1

28 U.S.C. § 994(t) ............................................................................................................................. 4

**Federal Rules**

United States Sentencing Guidelines (USSG) § 1B1.13 ................................................................ 4, 5, 6, 7

**Federal Regulations**

28 C.F.R. § 542.15(a)................................................................................................................................ 4

## INTRODUCTION

Defendant Victor Turk is currently serving a 10-year sentence imposed by this Court on July 31, 2019 pursuant to his convictions for possession with intent to distribute methamphetamine and possessing a loaded revolver in furtherance of a drug trafficking crime. To date, Defendant has served 21.3 percent of his sentence. He is housed at the United States Penitentiary in Lompoc, California ("USP Lompoc") with an anticipated release date of February 16, 2027. Defendant seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) or home confinement, citing the fact that he suffers from aortic stenosis, a rare congenital heart condition. Dkt. No. 34. Defendant has met the statutory prerequisites for seeking judicial relief by exhausting all administrative remedies, and as such, this Court may consider Defendant's motion on the merits. The government does not contest that Defendant's heart condition may expose him to greater risk of serious illness from COVID-19, which may qualify as an "extraordinarily and compelling circumstance" under the relevant standard. However, the government now respectfully requests that the Court deny Defendant's motion for release because the record demonstrates that Defendant poses a danger to the community if released, and because releasing Defendant at this time—after serving 21.3 percent of his sentence—would be inconsistent with the goals of sentencing set forth Section 3553(a).

## BACKGROUND

The government filed an Indictment charging Defendant with one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(B), and one count of carrying or possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Dkt. 1. Defendant made his initial appearance on October 17, 2018. Dkt. 2. On November 21, 2018, Magistrate Judge Thomas S. Hixson held a detention hearing and thereafter ordered Defendant to be detained pending trial based on the court's finding that Defendant posed a danger to the community and a flight risk if released. Dkt. 13, Order of Detention.

On May 13, 2019, Defendant pleaded guilty to all counts in the Indictment pursuant to a plea agreement. Dkt. 26-27. The plea was based on Defendant's conduct on August 10, 2018, when San Francisco Police Department (SFPD) Officers contacted Defendant as he was seated in the driver's seat of his car, which was parked in a red zone near the intersection of Post and Polk Streets in the

1  Tenderloin District of San Francisco.  Dkt. 26, Plea Agreement ¶ 2; PSR ¶ 7.  While searching
2  Defendant's vehicle, police recovered a loaded .38 caliber revolver under the driver's seat.  Officers also
3  found 79.4 grams of methamphetamine, a black digital scale, forty-five additional .38 caliber rounds of
4  ammunition, and $2,911 in cash drug proceeds.  Dkt. 26, ¶ 2.

5  At the time of sentencing, Defendant's criminal history included ten prior convictions – six
6  felonies and four misdemeanors – for offenses including knifepoint robbery, first degree burglary,
7  identity theft, and drug possession.  PSR ¶¶ 27-36.  Five of the defendant's ten prior convictions resulted
8  from crimes that he committed while on probation (PSR ¶¶ 28-29; 35-36), or pre-trial release (PSR ¶
9  32).  Similarly, Defendant was on parole when he committed the offenses of conviction in this case.
10 PSR ¶ 38.

11 The Court adopted the guidelines calculations set forth in the PSR, finding that the applicable
12 guidelines range for count one (the drug offense), which carried a mandatory minimum sentence of 60
13 months, was 77 to 96 months.  PSR. ¶ 72-74.  The Court further found that count two (the firearm
14 offense) required a mandatory minimum sentence of 60 months to run consecutive to the sentence
15 imposed on count one.  *Id.*  Because Defendant was in criminal history category VI with a criminal
16 history score of 20 (PSR ¶¶ 37-39) the combined applicable guidelines range was 137 to 156 months.
17 PSR ¶¶72-74.  The Court varied down from the applicable range, sentencing Defendant to the
18 mandatory minimum term of 120 months of incarceration to be followed by five years of supervised
19 release.  Dkt. 31.

20 Defendant is presently 45 years old.  In his motion for release, defendant states that his aortic
21 stenosis, a heart condition involving an abnormality in the aortic valve, places him at greater risk of
22 severe illness from COVID-19.  Dkt. 34, Def. Mot. at 5.  Defendant's Bureau of Prisons (BOP) medical
23 records corroborate Defendant's diagnosis and note that BOP has designated Defendant as a "chronic
24 care" inmate who will receive ongoing care for his aortic stenosis.  *See* Exh. B to Def. Mot., BOP
25 Medical Records (under seal); *see also* Exhibit A to the Declaration of Casey Boome ("Boome Decl."),
26 Email from BOP Counsel Regarding Defendant's Medical Care (noting that the next steps in
27 Defendant's care will include conducting a cardiac "stress test" followed by a follow-up appointment
28

with a cardiologist, who will determine whether Defendant needs an aortic valve replacement. If the procedure is deemed necessary, BOP will arrange for Defendant to see a cardiac surgeon.).

BOP calculates that, as of September 28, 2020, Defendant has served two years, one month and 19 days—21.3 percent of his full 120-month sentence and 25 percent of his expected sentence after adjusting for good time credit. Boome Decl. Exh. B, BOP Jail Credit Calculation. Additional BOP records reviewed by the government reflect that Defendant has had no disciplinary infractions during his time in custody.

According to BOP data as of September 30, 2020, with an inmate population of 1,186, USP Lompoc currently has zero confirmed active COVID-19 cases among inmates and four confirmed active cases among prison staff.[1] Defendant states in his motion that, if released, he plans to reside with his mother and is currently coordinating with his pastor to find employment. Dkt. 34 at 8.

On July 16, 2020, Defendant submitted a written request for compassionate release to the warden of USP Lompoc. Boome Decl. Exh. C, Defendant's Request for Compassionate Release. On August 14, 2020, the warded denied Defendant's request, citing Defendant's "serious history of violence based on a 2002 conviction for Robbery" among other factors.[2] Boome Decl. Exh. D, Warden's Denial of Defendant's Request. Defendant filed his motion for compassionate release on September 23, 2020.

## ARGUMENT

**I.  DEFENDANT HAS ADMINISTRATIVELY EXHAUSTED**

Because Defendant has met the statutory prerequisites for seeking judicial relief, this Court may consider Defendant's motion. As set forth above, Defendant submitted a written request for compassionate release on July 16, 2020, which the warden denied on August 14, 2020. Boome Decl.

---

[1] BOP *COVID-19 Resources*, *available at* https://www.bop.gov/coronavirus/ (as of September 30, 2020)

[2] The government notes that, as the Court is likely aware, BOP has undertaken an urgent effort to evaluate all inmates for home confinement during their custodial sentence, which BOP has exclusive authority to designate under 18 U.S.C. §§ 3621(b), 3624(c); *United States v. Ceballos*, 671 F.3d 852, 855 (9th Cir. 2011). The Attorney General has directed the BOP to prioritize granting home confinement to eligible inmates who are especially vulnerable to COVID-19 based on their age and underlying health conditions as identified by the CDC, Att'y Gen. Memo. (Mar. 26, 2020), and the BOP has already transferred 7,686 inmates to home confinement since late March in response to the current pandemic. https://www.bop.gov/coronavirus/ (last viewed September 30, 2020). BOP is currently prioritizing for consideration those inmates who have either served 50% or more of their sentences, or have 18 months or less remaining on their sentence and have served 25% or more of their sentence.

Exhs. C-D. Over thirty days have lapsed since August 14, 2020; thus, there are no statutory impediments that would bar this Court from considering Defendant's motion on the merits. *See* 28 C.F.R. § 542.15(a).

## II. REDUCTION OF DEFENDANT'S SENTENCE IS NOT WARRANTED

Although the COVID-19 pandemic is an extraordinary world event, Defendant has failed to show that that its impact on him specifically, warrants his immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because he presents a danger to the community and because re-balancing the Section 3553(a) factors does not indicate the defendant should be released immediately as he seeks.

### A. Applicable law

This Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the Court "finds that" either "extraordinary and compelling reasons warrant such a reduction," or the defendant is at least 70 years old and has served at least 30 years in prison, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See, e.g.*, *United States v. Reid*, No. 17-cr-00175-CRB-1, Dkt. 554 (N.D. Cal. May 5, 2020); *United States v. Robinson*, No. 18-CR-00597 RS, Dkt. 33 (N.D. Cal. Apr. 27, 2020).[3]

The pertinent policy statement is set forth at United States Sentencing Guidelines (USSG) § 1B1.13. It prohibits this Court from reducing a defendant's sentence unless the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *See United States v. Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (N.D. Cal. May 4, 2020) (denying compassionate release claim due to danger).

The Sentencing Commission also provided explicit examples of what constitutes an "extraordinary and compelling circumstance" (in pertinent part):

---

[3] Congress explicitly gave authority to the Sentencing Commission to further describe what conduct would authorize a court to order a compassionate release. Specifically, 28 U.S.C. § 994(t) states that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A), "including the criteria to be applied and a list of specific examples."

US RESP. TO DEFENDANT'S MOT. FOR RELEASE
CR 18-0463 CRB                4

(A) **Medical Condition of the Defendant.**—

 (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

 (ii) The defendant is—

  (I) suffering from a serious physical or medical condition,

  (II) suffering from a serious functional or cognitive impairment, or

  (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13 cmt. n.1.

  Defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See United States v. Shabudin*, No. 11-CR-00664-JSW-1, Dkt. 571 (N.D. Cal. May 12, 2020). The existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not by itself provide a basis for a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding that the existence of COVID-19 alone does not constitute a basis for granting compassionate release). Nor would a defendant's chronic but manageable underlying medical condition, alone, constitute "extraordinary and compelling" circumstances. *See United States v. Arceo*, No. 09-CR-00616-EJD-1, Dkt. 86 (N.D. Cal. May 22, 2020).

  But the combination of an inmate's chronic medical condition and the risk of contracting COVID-19 in a custodial setting may constitute an extraordinary and compelling reason to grant a motion under 18 U.S.C. § 3582(c)(1)(A), where COVID-19 and an inmate's medical condition would not individually suffice. If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention ("CDC") as elevating the inmate's risk of becoming seriously ill from COVID-19,[4] that condition—in combination with the likelihood that a defendant may

---

[4] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at*

contract COVID-19 while incarcerated and suffer severe symptoms as a result—may constitute a "serious" medical condition "from which [the defendant] is not expected to recover," which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13 cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should also consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

### B. The government does not contest that Defendant presents an extraordinary and compelling circumstance

Defendant acknowledges that his medical condition, aortic stenosis, is not among the conditions identified by the CDC as a risk factor for severe illness from COVID-19. Dkt. 34 at 5; *see also supra*, note 4. Defendant relies on the opinion of Dr. George Bren, who asserts that "Mr. Turk has severe [aortic stenosis] which substantially increases his risk of developing severe o[r] fatal COVID-19 disease should he become infected." Exh. A to Def. Mot. at 16. Dr. Bren also notes that because aortic stenosis is relatively uncommon, "there appear to have been too few cases amongst those with COVID-19 to draw meaningful, statistically relevant conclusions" about the risk of severe illness to an individual with aortic stenosis who contracts COVID-19. *Id.* at 14. The government does not contest the validity of Dr. Bren's analysis. Indeed, the CDC indicates that individuals with "serious heart conditions such as heart failure, coronary artery disease, or cardiomyopathies" are at higher risk of severe illness from COVID-19. *See supra*, note 4. The CDC's Coronavirus information webpage also advises that "COVID-19 is a new disease. Currently there are limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19." Thus, in light of the developing research surrounding underlying medical conditions and COVID-19, and under the unique circumstances of this case, the government does not contest that the combination of Defendant's medical condition and the risk of contracting COVID-19 in a custodial setting may constitutes a basis to find an extraordinary and compelling circumstance under 18 U.S.C. § 3582(c)(1)(A).

---

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified September 11, 2020).

US RESP. TO DEFENDANT'S MOT. FOR RELEASE
CR 18-0463 CRB                                          6

It should be noted that, according to BOP data as of September 30, 2020, with a current inmate population of 1,186, USP Lompoc has zero confirmed active COVID-19 cases among the inmates and four confirmed active cases among prison staff. *See supra*, note 1. Since the beginning of the COVID-19 pandemic, two inmates have died from COVID-19 at USP Lompoc while 157 inmates and 27 prison staff members have been infected and recovered. *Id.* Given these facts, Defendant's assertion that "[r]emaining in custody is certainly a potential death sentence for Mr. Turk" (Dkt. 34 at 2) appears overstated, especially in light of Defendant's stated intention if released—to move to San Francisco and join the workforce (Dkt. 34 at 9), which may also expose him to COVID-19.

### C. Defendant poses a danger to the community if released

This Court may not reduce Defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). *See Cazarez*, No. 15-CR-00362-CRB-1, Dkt. 78 (denying compassionate release claim due to danger). This record precludes such a finding.

Under Section 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that Defendant is not a danger to the safety of any other person or the community.

#### (1) Nature and circumstances of the charged offense, § 3142(g)(1)

On August 10, 2018 when Defendant was stopped by SFPD officer, he was using his Lexus sedan as a drug-dealing command center, complete with all the necessary tools of the trade, including methamphetamine, a digital scale, cash, and a loaded revolver under the driver's seat. *See* PSR ¶¶ 7-9. The drug trade is a dangerous business in which robberies are common and disputes can escalate into violent encounters that present a significant danger to the community. This danger is heightened where, as here, the participants in the illicit drug trade possess loaded firearms within arm's reach. Indeed, the Defendant's revolver was loaded and stashed in an easily accessible location, directly beneath the

driver's seat where Defendant was seated. Defendant's crimes involved a controlled substance and a firearm, both of which are statutory factors that the Court should consider when evaluating the nature of Defendant's offenses of conviction. 18 U.S.C. § 3142(g)(1).

### (2) Weight of the evidence, § 3142(g)(2)

The weight of the evidence here is overwhelming. Defendant admitted to his conduct in the Plea Agreement. If defendant had not done so, the United States was prepared to introduce SFPD body-worn camera video detailing the Defendant's encounter with police, as well as the items of physical evidence recovered from Defendant's car, including the gun, methamphetamine, scale, and cash. Although the Ninth Circuit treats the weight of the evidence as the least important factor, the judge is still "require[d]" to consider it, and it can help establish dangerousness. *United States v. Hir*, 517 F.3d 1081, 1090 (9th Cir. 2008) (finding that "the weight of the evidence clearly and convincingly establishe[d]" a likelihood that the defendant would pose a danger if released).

### (3) Defendant's history and characteristics, § 3142(g)(3)

At the time of sentencing, Defendant's criminal history included ten prior convictions – six felonies and four misdemeanors – for offenses including knifepoint robbery, first degree burglary, identity theft, and drug possession. PSR ¶¶ 27-36. The robbery and burglary offenses are of particular concern. On November 4, 2002, Defendant was convicted of robbery after multiple witnesses identified him as the perpetrator of two separate knifepoint robberies at a GNC store in Vallejo. PSR ¶ 31. Defendant was sentenced to five years in prison for the Vallejo robbery, which he served concurrently to a sentence of four years imposed by the San Mateo County Superior Court pursuant to a separate conviction for second degree robbery on June 6, 2003. PSR ¶ 33.

On September 12, 2011, Defendant was convicted of first degree burglary after Defendant's girlfriend of two years reported that Defendant broke into her house through the garage and assaulted her while she was asleep. PSR ¶ 34. Defendant's girlfriend told police that she had ended their relationship and Defendant then told her that he had a sex tape of them together and he was going to "ruin her life." *Id*. The police report indicates the victim stated that Defendant shook her back and forth furiously. *Id*. Defendant's 11-year prison sentence was initially suspended after he had served 120

days in county jail, but Defendant was later resentenced to six years in prison after his March 24, 2014 felony convictions for receiving stolen property and identity theft offenses. PSR ¶¶ 34, 36.

Defendant's record also demonstrates that community and court supervision will not prevent him from committing crimes if released. Indeed, five of Defendant's ten prior convictions resulted from crimes that he committed while on probation or pre-trial release. PSR ¶ 28 (convicted of receipt of stolen property in 1995 while on probation for a drug offense); ¶ 29 (convicted of a drug offense in 1995 while on probation for receipt of stolen property); ¶ 32 (convicted of felony vehicle theft in 2003 while on pretrial release for robbery); ¶¶ 35-36 (convicted of a drug offense, receipt of stolen property, and identity theft in 2014 while on probation pursuant to a suspended sentence for first degree burglary). Similarly, Defendant was on parole pursuant to his convictions for receipt of stolen property and identity theft when he committed the offenses of conviction in this case. PSR ¶¶ 36, 38. After assessing Defendant's criminal history and the offenses of conviction this case, BOP classified defendant in the "high risk recidivism level" category. Boome Decl. Exh. E, Defendant's BOP Inmate Profile.

At Defendant's detention hearing, after considering Defendant's history and characteristics, Magistrate Judge Hixson found "by clear and convincing evidence . . . that no condition or combination of conditions will reasonably assure the safety of the community." Dkt. 13. The court based its decision on "the defendant's prior felony convictions for assault,[5] burglary, robbery, and other crimes, and the defendant's history of non-compliance with the requirements of prior periods of community supervision." *Id*. Judge Hixson "carefully considered the defendant's proposal of in-patient drug treatment as an alternative to detention" but determined that in-patient treatment would be insufficient to reasonably assure the safety of the community. *Id*. Defendant's drug addiction is well documented in the PSR, which notes the Defendant's admission that he has used methamphetamine regularly since age 19. PSR ¶ 59. While Defendant's stated interest in drug treatment is laudable, "the Court cannot simply trust that [the defendant] will stay clean and abstain from further criminal acts." *United States v. Makela,* No. 19-CR-215-CRB-1, Dkt. 46 (N.D. Cal. July 10, 2020) (denying compassionate release based on

---

[5] Defendant's CLET criminal history reflects a felony assault conviction pursuant to Cal. Penal Code § 245 in connection with Defendant's 2011 burglary conviction. The PSR notes an allegation of assault in connection with the burglary, but does not note an assault conviction. PSR ¶ 34.

danger to the community where defendant had committed a series of armed bank robberies).

### (4) Danger to others, § 3142(g)(4)

The COVID-19 pandemic does not reduce Defendant's danger to others. *See United States v. Johnson*, No. 16-CR-251-WHA, Dkt. 103 (N.D. Cal. August 26, 2020) (denying compassionate release based on finding that defendant posed a danger to the community where police had found loaded firearms and drugs during searches and where defendant had a history of gun and drug offenses); *Makela,* No. 19-CR-215-CRB-1, Dkt. 46. Defendant has not shown that his current medical condition or risk of COVID-19 (a risk that applies in the community as well) makes him less of a danger. Indeed, the danger posed to the community by firearms and drug offenses has been well-established. *See United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004) (approving detention on danger prong due to defendant's possession of firearms and stating that "danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute."); *United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008) (Spero, J.) ("In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm."). Here, the defense presents no additional facts that meaningfully shift the balance of the § 3142(g) factors in Defendant's favor.

### D.     Analysis of the 18 U.S.C. § 3553(a) factors weighs against compassionate release

Finally, any compassionate release decision—even for a statutorily eligible defendant—must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i). Several of the 3553(a) factors most relevant to the Court's consideration of Defendant's motion overlap with those discussed above in the context of the danger that Defendant poses if released, including the nature and circumstances of the offenses, the history and characteristics of the defendant, and the need to protect the public from further crimes of the defendant.

Additionally, Court should consider the 3553(a) factors in light of the fact that Defendant has served only 21.3 percent of his full sentence and 25 percent of his expected sentence after adjusting for good time credit. *See United States v. Furaha*, No. 09-CR-00742-JST-1, Dkt. 36 at 4 (N.D. Cal. May 8, 2020) (denying defendant's compassionate release motion and finding that permitting compassionate release for a defendant who "has served only roughly 20 percent of his sentence . . . would not satisfy the

US RESP. TO DEFENDANT'S MOT. FOR RELEASE
CR 18-0463 CRB                                              10

need for the sentence imposed . . . to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense. Nor would it afford adequate deterrence to criminal conduct or adequately protect the public from further crimes of the defendant."); *Makela,* No. 19-CR-215-CRB-1, Dkt. 46 (denying compassionate release for bank robbery defendant who had served approximately 15 percent of his 97-month sentence because "in light of the seriousness of [the defendant's] crimes, the need 'to provide just punishment for the offense,' and the need 'to protect the public from further crimes of the defendant,' granting [the defendant's] motion would be inconsistent with the applicable sentencing factors" set forth in Section 3553(a)(2).) Similarly, here, Defendant seeks his permanent release after serving approximately 25 months of imprisonment, far less than Defendant's prior state sentences imposed after his convictions for robbery, burglary, and other state crimes. As such, granting Defendant's motion at this time would be inconsistent with the 3553(a) sentencing factors.

### III. IF THIS COURT MODIFIES DEFENDANT'S SENTENCE, IT SHOULD DO SO WITH APPROPRIATELY RESTRICTIVE CONDITIONS

If the Court is inclined to grant Defendant's motion for compassionate release, this Court should substitute a term of supervised release with a condition of home confinement for the duration of Defendant's current sentence of imprisonment. The government submits that releasing Defendant outright would not appropriately re-balance the 3553(a) factors in this case, particularly given that the present conditions caused by the pandemic are likely impermanent—public reporting indicates that various medical professionals globally are in the process of developing a vaccine and researching other methods of combatting the disease in the coming months. *See, e.g.*, https://www.nih.gov/news-events/news-releases/nih-clinical-trial-investigational-vaccine-covid-19-begins.

In order to minimize risks to public health, the government also respectfully requests that the Court set any release 14 days from the date of its order to accommodate BOP's ability to quarantine Defendant prior to his release to protect the community from potential further spread.

//
//
//
//

US RESP. TO DEFENDANT'S MOT. FOR RELEASE
CR 18-0463 CRB                                               11

# CONCLUSION

Because Defendant is a danger to the safety of the community as provided in 18 U.S.C. § 3142(g) and because his release would not serve the § 3553(a) factors, the government respectfully requests that the Court deny Defendant's motion.

DATED: October 1, 2020

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

_/s/ Casey Boome_
CASEY BOOME
Assistant United States Attorney